## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**UNITED STATES OF AMERICA**,

            Plaintiff,

vs.                                        **Case No. 8:02-CR-329-T-17EAJ**

**JOAQUIN MARIO**
**VALENCIA-TRUJILLO**,

            Defendant.

_____/

### REPORT AND RECOMMENDATION

    This cause comes before the court on **Defendant Joaquin Mario Valencia-Trujillo's Motion to Enforce Rule of Specialty** (Dkt. 67)[1], **Plaintiff's Amended Response to Defendant's Motion to Enforce Rule of Specialty** (Dkt. 97), and **Defendant's Reply Memorandum** (Dkt. 108) as well as **Defendant's Notice of Filing Expert's Written Report** (Dkt. 106).[2]  Oral argument has also been held.

    After fully considering the submissions and legal arguments of the parties, it is recommended that Defendant's motion be denied in part and granted in part.

---

    [1]  On March 11, 2005, the district judge referred this motion to the undersigned pursuant to 28 U.S.C. § 636(c) and Local Rule 6.01(b), M.D. Fla., for proceedings, consideration, and a Report and Recommendation (Dkt. 93).

    [2]  Defendant submitted a report from Bruce Zagaris, Esq., who Defendant refers to as an expert in international law and extradition (Dkt. 100 at 2).  Although the court has considered Mr. Zagaris's report, it has not relied on it to any extent in the recommended disposition of Defendant's motion.  Mr. Zagaris offers a legal opinion cumulative to the arguments Defendant advances.

I.   **Factual background**

On August 22, 2002, a federal grand jury sitting in the Middle District of Florida returned a four count indictment (the "Indictment"), charging Defendant with four felony offenses.  The Indictment asserts that Defendant is a member of the Cali Cartel, a Colombian drug trafficking organization.  All four counts allege that Defendant engaged in criminal conduct "[f]rom an unknown date which was no later than 1988, and continuing thereafter up to and including the date of this Indictment."  Count I alleges that Defendant conspired to import cocaine into the United States.  Count II alleges that Defendant conspired to possess cocaine with the intent to distribute it in the United States.  Count III alleges that Defendant conducted a continuing criminal enterprise and enumerates 36 predicate acts, each citing 18 U.S.C. § 2.  Predicate acts 1-26 predate December 17, 1997, and predicate acts 27-36 occurred after December 17, 1997.  Count IV alleges that Defendant conspired to commit money laundering offenses.

By United States Embassy Diplomatic Note No. 073 ("Note 073"), dated January 28, 2003, the United States requested that the Colombian government arrest Defendant for the purpose of extraditing him to the United States.  Note 073 cites the Indictment and explains that Defendant is charged with engaging in a continuing criminal enterprise that began as early as 1988 and with violating 18 U.S.C. § 2, among other criminal charges.  Note

2

073 also states: "However, each one of these charges includes and is supported independently by manifest acts that occurred after December 17, 1997." (Def. Ex. B at 2).

Pursuant to the United States's request, Colombian officials arrested Defendant in Bogota, Colombia on January 31, 2003. Through Diplomatic Note No. 449, the United States requested Defendant's extradition from Colombia.   Note 449 cites the Indictment, including Count III and 18 U.S.C. § 2, and states: "Although Counts One, Two, Three and Four of the indictment against the individual refer to actions taken from an unknown date which was no later than 1988, and continuing up to and including August 22, 2002, the charges in those counts are independently supported by actions taken by the fugitive after December 17, 1997." (Def. Ex. C at 4).

In support of its extradition request, the United States provided the Colombian government with the affidavit of Joseph Ruddy, Assistant United States Attorney, dated March 4, 2003.  Mr. Ruddy's affidavit attaches the Indictment, the arrest warrant, and the affidavit of Special Agent Roderick D. Huff of the Federal Bureau of Investigation, dated November 22, 2002.   Mr. Ruddy's affidavit describes the four counts of the Indictment and quotes the applicable provisions of Titles 18 and 21 of the United States Code, including 18 U.S.C. § 2(a).  Mr. Ruddy's affidavit states that, although Defendant's criminal activity began approximately in

3

1988, each count of the Indictment is independently supported by acts occurring after December 17, 1997. (Ruddy Aff. at ¶ 30).

Special Agent Huff's 139-page affidavit details his investigation into Defendant's alleged illegal activities, including facts obtained from 10 cooperating witnesses. His affidavit cites evidence in support of all four counts of the Indictment, but does not quote any provisions of the United States Code. Special Agent Huff's discussion of Defendant's post-December 17, 1997 actions begins on page 103 of his affidavit.

After reviewing the extradition documents provided by the United States, on February 11, 2004, the 10 judges of the Colombian Supreme Court of Justice approved Defendant's extradition in a unanimous opinion. In pertinent part, the opinion states:

> Regarding charges first, second, third, and fourth
> . . .it appears that it finds typical suitability
> in our penal system in article 340, second clause
> (inciso) Penal Code, as modified through article 8th
> of Law 733, dated January 29, 2002, which provides
> association to commit crimes related to commission
> of the crime of narco-trafficking and assets
> laundering, since, as evidenced, Joaquin Mario
> Valencia-Trujillo . . . *engaged in a Continuous
> Criminal Company when he broke for three times and
> more several*[3] provisions of Title 21 U.S. Code, . .
> . those crimes include among others, the crimes

---

[3]   The italicized language is not included in the English translation of the Colombian Supreme Court of Justice's opinion that Defendant provided to the court. However, in Executive Resolution NR. 24 (the "Colombian Resolution"), discussed below, Colombian President Alvaro Uribe Velez quotes the Supreme Court's opinion, including the italicized language. The parties do not dispute the accuracy of the translations of the extradition documents.

>        listed in Charge One, and Charge Two of this
>        Accusation, and crimes listed in the Predicate
>        Actions of the Charge. . . in his capacity as
>        "organizer, supervisor, and director, in
>        association with five or more persons . . ."
>        (Charge third and) finally "to carry out and intend
>        to carry out a financial transaction which affected
>        interstate and foreign trade . . ." of returns
>        coming from illegal activities (charge fourth).

(Def. Ex. E at 14).

In a concluding section of the opinion, the Colombian Supreme

Court of Justice held:

>    1.   [I]n the case of granting the requested
>         extradition, the delivery should be conditioned
>         that [Defendant] will not be judged for actions
>         other than those originating the claim . . .
>
>    2.   Finally, taking into account that in [Count III] .
>         . . there are "predicate actions" committed prior
>         and "since or around 1997" *it is indispensable that
>         the National Government conditions the extradition
>         in that he will not be judged for actions committed
>         prior to the effective date of the Legislative Act
>         No. 1, 1997*, which amended article 35 of the
>         Political Constitution, and which authorized
>         extradition of Colombians by birth.

(Id. at 16) (emphasis added).

On February 25, 2004, Colombian President Alvaro Uribe Velez

issued the Colombian Resolution, authorizing Defendant's

extradition to the United States.  The Colombian Resolution quotes

portions of Note 449, including that Count III of the Indictment

charges Defendant with engaging in a continuing criminal enterprise

and violating 18 U.S.C. § 2, and the portions of the Colombian

Supreme Court of Justice's opinion excerpted above.  (See Def. Ex.

G).

II.  Discussion

**A.   Extradition under Colombian law**

An extradition treaty between the United States and Colombia, signed in 1979 and entered into force in 1982, permits the extradition of nationals for narcotics trafficking and other transnational crimes.   In 1986, the Colombian Supreme Court of Justice ruled that the treaty was invalid under Colombian law. Extradition of Colombian nationals after 1986 proceeded only pursuant to executive decree.   In 1991, however, the Colombian government ratified a new constitution, which prohibited the extradition of Colombian nationals.   Then, on December 17, 1997, Colombia enacted a constitutional amendment that invalidated the non-extradition provision of the 1991 constitution.[4]   This amendment expressly applies only to crimes committed after December 17, 1997.   Additionally, Colombian domestic extradition law authorizes extradition only for certain offenses for which the minimum penalty under Colombian law is more than four years imprisonment.[5]

---

[4]   Article 35 of the Colombian Constitution, as amended, states: "Extradition could be demanded, granted, or offered according to public treaties and, in absence of them, to the law. Besides, Colombian born nationals extradition will be granted for outside Colombia committed crimes, consider as that in Colombian criminal legislation. . . . Extradition will not be proceed when it concerns to crimes committed before the promulgation of this law." (Def. Ex. F).

[5]   The Colombian Supreme Court of Justice's opinion states that "[u]nder the provisions of numeral 1st, article 511 Code of Penal

**B.    General principles of extradition law**

Extradition is the surrender by one nation to another of a person accused or convicted of an offense outside of its own territory and within the territorial jurisdiction of the other. United States v. Puentes, 50 F.3d 1567, 1572 (11th Cir. 1995). However, as a matter of international law, "nations are under no legal obligation to surrender a fugitive from justice in the absence of a treaty." Id., citing 1 M. Bassiouni, *International Extradition: United States Law and Practice*, 359-60 (2d rev. ed. 1987). An extradition treaty is, therefore, an agreement between two governments for the prosecution and punishment of criminals. Id. Extradition treaties typically specify certain offenses for which extradition will be granted as between the two respective nations. Id.

**1.    The specialty doctrine**

Under the specialty doctrine, a nation that receives a criminal defendant pursuant to an extradition treaty or executive branch resolution may try the defendant only for those offenses for which the other nation granted the extradition. Id.; see also Gallo-Chamorro v. United States, 233 F.3d 1298, 1305 (11th Cir. 2000), cert. denied, 533 U.S. 953 (2001) (Gallo-Chamorro II). Upon

_____

Procedure, for extradition to be granted, it is required that the action motivating it is considered as a Crime in Colombia, and punished through a sanction privative of freedom which minimum is not less than four (4) years." (Def. Ex. E at 13).

receipt of an extradition request, the surrendering nation may examine the substance of each of the charges specified in the request and may choose to grant extradition for only the extraditable offenses listed in the treaty. Puentes, 50 F.3d at 1572.

The doctrine of specialty, therefore, is based on international comity. Gallo-Chamorro II, 233 F.3d at 1305; see also United States v. Rauscher, 119 U.S. 407 (1886) (recognizing specialty doctrine for the first time). The doctrine provides the surrendering nation with a means of ensuring compliance with the extradition treaty, and "'reflects a fundamental concern of governments that persons who are surrendered should not be subject to indiscriminate prosecution by the receiving government.'" Puentes, 50 F.3d at 1572, quoting Fiocconi v. Atty. Gen. of United States, 462 F.2d 475, 481 (2d Cir. 1972), cert. denied, 409 U.S. 1059 (1972). Further, "preservation of the institution of extradition requires that the petitioning state live up to whatever promises it made in order to obtain extradition." Gallo-Chamorro II, 233 F.3d at 1305 (internal quotations omitted).

In United States v. Gallo-Chamorro, 48 F.3d 502, 506 (11th Cir. 1995) (Gallo-Chamorro I), the Eleventh Circuit emphasized that although the rule of specialty limits the jurisdiction of United States courts to try fugitives detained abroad, the doctrine "has never been construed to permit foreign intrusion into the

8

evidentiary or procedural rules of the requisitioning state" (internal quotations omitted). If the United States tries the defendant "for the precise offense contained in the extradition order, the doctrine of specialty does not purport to regulate the scope of proof admissible in the judicial forum of the requisitioning state." United States v. Alvarez-Moreno, 874 F.2d 1402, 1414 (11th Cir. 1989); see also United States v. Bowe, 221 F.3d 1183, 1191-92 (11th Cir. 2000) (holding that because defendant was charged for the precise offense contained in the extradition order, "the prosecution's sweeping evidentiary case did not violate the doctrine of specialty").

Rather than mandating exact uniformity between the charges set forth in the extradition request and the actual indictment, "[w]hat the doctrine of specialty requires is that the prosecution be based on the same facts as those set forth in the request for extradition." Gallo-Chamorro II, 233 F.3d at 1305 (internal quotations omitted).

Further, in the Eleventh Circuit, an individual extradited pursuant to an extradition treaty has standing to raise objections under the doctrine of specialty which the requested nation might have asserted. Puentes, 50 F.3d at 1575. "The extradited individual, however, enjoys this right at the sufferance of the requested nation." Id. The defendant, therefore, "can raise only those objections to the extradition process that the surrendering

country might consider a breach of the extradition treaty." United States v. Diwan, 864 F.2d 715, 721 (11th Cir. 1989).

The surrendering state may waive its right to object to a treaty violation and allow prosecution for offenses other than those for which the defendant was extradited. Puentes, 50 F.3d at 1575. Waiver denies the defendant standing to object to violations of the specialty doctrine. Id. The requested state's waiver "may occur either contemporaneously with the extradition or after the defendant has been surrendered to the requested state." Id. at 1575 n.5. Further, a defendant also may assert a violation of an extradition treaty on dual criminality grounds. Gallo-Chamorro I, 48 F.3d at 507.

### 2.   Doctrine of dual criminality

The doctrine of dual criminality is distinct from the doctrine of specialty. Id. Dual criminality mandates that a prisoner be extradited only for conduct that constitutes a serious offense in both the requesting and surrendering country. Gallo-Chamorro II, 233 F.3d at 1306. While specialty focuses on the conduct prosecuted, "[d]ouble criminality refers to the characterization of the relator's criminal conduct insofar as it constitutes an offense under the law of the respective states . . . no state shall use its processes to surrender a person for conduct which it does not characterize as criminal." Gallo-Chamorro I, 48 F.3d at 507, quoting United States v. Herbage, 850 F.2d 1463, 1465 (11th Cir.

10

1988).

Dual criminality does not require that the surrendering country have a provision that is identical to the criminal statute at issue. See Collins v. Loisel, 259 U.S. 309, 312 (1922); Gallo-Chamorro II, 233 F.3d at 1307; United States v. Khan, 993 F.2d 1368, 1372 (9th Cir. 1993).  The doctrine can be satisfied even though the names of the crimes and the required elements are different in the two countries.  Id.  However, the laws of the two countries must be sufficiently analogous.  Khan, 993 F.2d at 1372.  Indeed, what is required is that the defendant could be charged and punished in the surrendering country for the conduct underlying the count.  Gallo-Chamorro II, 233 F.3d at 1307.  Further, that "defenses may be available in the requested state that would not be available in the requesting state, or that different requirements of proof are applicable in the two states, does not defeat extradition under the dual criminality principle."  Id., quoting Restatement (Third) of Foreign Relations Law of the United States § 476 cmt. d (1987).

## C.    Aiding and abetting, 18 U.S.C. § 2

Defendant argues that his Indictment must be redacted to delete any reference to the aiding and abetting statute, 18 U.S.C. § 2, in Count III because the Colombian Resolution and the Colombian Supreme Court of Justice's decision do not expressly authorize his extradition for violations of 18 U.S.C. § 2, and because aiding and

abetting is not a crime under Colombian law. (Dkt. 108 at 4).[6]

The Government responds that aiding and abetting is a theory of prosecution and not a separate offense. (Dkt. 97 at 2).  The United States also asserts that because the extradition documents do not expressly prohibit Defendant's extradition on the basis that aiding and abetting is not an offense under Colombian law, the Government is free to prosecute Defendant under 18 U.S.C. § 2 without violating the specialty doctrine.

In Gallo-Chamorro I, the Eleventh Circuit found that a Pinkerton jury instruction is not equivalent to a jury instruction on aiding and abetting under 18 U.S.C. § 2, and ruled that the district court was within its discretion in giving the Pinkerton instruction to the jury.[7]  48 F.3d at 503.  In that case, the United States requested Gallo-Chamorro's extradition from Colombia to stand trial for drug trafficking crimes, including violations of 18 U.S.C. § 2.  Id.  The extradition document issued by the

---

[6]  Section 2 of Title 18 states:

    (a)   Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

    (b)   Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

[7]  In Pinkerton v. United States, 328 U.S. 640, 647-48 (1946), the Supreme Court held that a co-conspirator could be guilty of a substantive offense even though he did no more than join the conspiracy, provided that the offense was reasonably foreseeable and was committed in furtherance of the conspiracy.  Instructing juries on this concept is know as a Pinkerton instruction.

Colombian Ministry of Justice in 1990 granted the defendant's extradition for one count of cocaine importation, one count of conspiracy to distribute cocaine, and three counts of distributing cocaine. Id. The Colombian government denied extradition on all other counts and stated: "The Colombian Supreme Court has manifested on several occasions that the violation of Title 18, Section 2, of the United States Code does not has [sic] its equivalent in Colombia, and therefore it does not authorize, either, the extradition for this concept." Id.

Gallo-Chamorro argued that he could not be prosecuted under 18 U.S.C. § 2 according to the extradition papers and the specialty doctrine. Id. at 504. The government responded that the doctrine of specialty was not applicable to 18 U.S.C. § 2 because the statute does not create a substantive offense. Id. The Eleventh Circuit noted that the district court granted the defense motion and ordered the government to strike all references to 18 U.S.C. § 2 from the indictment. Id. The district court did not include the standard aiding and abetting instruction when it charged the jury. Id. Instead, at the government's request, the court instructed the jury on the theory of co-conspirator liability under Pinkerton, and Gallo-Chamorro was convicted. Id.

In Gallo-Chamorro II, the defendant sought to vacate his conviction and sentence, claiming ineffective assistance of counsel and that the district court erred in giving the Pinkerton

13

instruction.   233 F.3d at 1301.   The Eleventh Circuit did not address whether 18 U.S.C. § 2 is a substantive offense or a theory of liability but merely observed: "The district court granted Gallo's motion, rejecting the government's position that [18 U.S.C.] § 2 does not create a separate substantive offense."  Id. at 1302.

Rejecting Gallo-Chamorro's claim for post-conviction relief, the appellate court upheld the Pinkerton instruction and again affirmed that Gallo-Chamorro was prosecuted only for the crimes for which Colombia granted extradition and that there was no violation of the specialty doctrine.   Id. at 1306.   The Eleventh Circuit emphasized that "[r]ather than mandating exact uniformity between the charges set forth in the extradition request and the actual indictment, what the doctrine of specialty requires is that the prosecution be based on the same facts as those set forth in the request for extradition."  Id. at 1305.

Neither Gallo-Chamorro I or II nor any other cases support Defendant's position that Columbia did not authorize Defendant's prosecution on allegations of aiding and abetting and that the rule of speciality requires that the indictment be redacted to eliminate the references to aiding and abetting.

Unlike Gallo-Chamorro I and II, the Colombian government in this case did not prohibit Defendant's extradition for violations of 18 U.S.C. § 2 in either the Colombian Resolution authorizing Defendant's extradition or the Colombian Supreme Court of Justice's

14

decision.    In  fact,  these  documents  mention  Count  III  of  the

Indictment  and  the  predicate  acts  upon  which  the  count  is  based.

See,  e.g.,  United  States  v.  Lehder-Rivas,  668  F.Supp.  1523,  1526

(M.D.  Fla.  1987)(holding  that  the  absence  of  explicit  language  in

the  Colombian  Supreme  Court  of  Justice's  opinion  denying  defendant's

extradition  on  a  continuing  criminal  enterprise  charge  "compels  the

conclusion  that  the  charge  was  included  in  the  approval  of

[defendant's]  extradition");  see  also  United  States  v.  Levy,  905

F.2d  326,  328-29  (10th  Cir.  1990).

Further,  the  affidavits  and  the  diplomatic  notes  the  United

States  provided  to  Colombia  detail  the  continuing  criminal

enterprise  charge  contained  in  Count  III  of  the  Indictment,  which

in  turn  cites  18  U.S.C.  § 2  within  each  of  the  36  predicate  acts,

in  addition  to  the  Title  21  violations.    Although  the  Colombian

Supreme  Court  of  Justice's  decision  does  not  cite  18  U.S.C.  § 2,  it

does  cite  both  Count  III  and  the  predicate  acts,  which  include  the

citations  to  18  U.S.C.  § 2 .    See  page  4-5  and  footnote  3,  supra.

Additionally,  the  Colombian  Resolution  quotes  the  same  language  from

the  Colombian  Supreme  Court  of  Justice's  decision  and  also  the

portion  of  Note  449  which  cites  18  U.S.C.  § 2.[8]

---

[8]   The  Colombian  Resolution  quotes  the  language  in  Note  449
pertaining  to  the  United  States's  request  for  Defendant's
extradition  on  Count  III  as  follows:

> Charge  Three.    Participation  in  continued  criminal
> company  violating  in  [sic]  three  or  more  times
> several  dispositions  on  serious  crimes  contained  on

In contrast to Gallo-Chamorro I and II, the Colombian extradition documents in this case do not expressly state that prosecution under 18 U.S.C. § 2 is not authorized.  Having done so in 1990 in the case involving Gallo-Chamorro, the Colombian Government was obviously aware in 2004 that it could have conditioned extradition on not permitting prosecution under this statute in this case.  Its failure to do so supports the Government's position that redaction is not required to uphold the principle of speciality.  See also Lehder-Rivas, 668 F.Supp. at 1526-27 (noting that "Colombia has a record of vigilance in matters concerning the rule of specialty").  Accordingly, the rule of specialty has not been violated.

Defendant, citing Gallo-Chamorro I and II, also contends that the dual criminality principle prohibits his prosecution for violations of 18 U.S.C. § 2 because the aiding and abetting statute has no counterpart in Colombian law.  The Government responds that aiding and abetting is a theory of liability and not a separate offense.

Neither Gallo-Chamorro I nor II holds that 18 U.S.C. § 2 is not an extraditable provision under Colombian law.  The decisions merely

_____

> Title 2 [sic] 21 U.S. Code, includ[ing] but not limited to, Sections 841, 843(b), 846, 952, 959, and 963, and in Titles 18, Section 2 U.S. Code, everything in violation of Title 21, Sections 848(a), and 960 of the U.S. Code . . .

(Def. Ex. G at 2).

recite the Colombian extradition document in that case which stated that 18 U.S.C. § 2 has no counterpart in Colombian law.  Gallo-Chamorro I, 48 F.3d at 503; Gallo-Chamorro II, 233 F.3d at 1302. Further, 18 U.S.C. § 2 is not a separate offense carrying specific penalties under United States law, but is a separate theory of prosecution which makes an aider and abetter punishable to the same extent as a principal under applicable provisions of the United States criminal code.

The elements of aiding and abetting are: (1) specific intent to facilitate the commission of a crime by another; (2) "guilty knowledge" by an alleged abettor; (3) commission of the substantive offense by someone else; and (4) assistance or participation in the commission of the offense by the alleged abettor.  United States v. Teffera, 985 F.2d 1082, 1086 (D.C. Cir. 1993).

A jury may be instructed on the theory of aiding and abetting even though the statute is not charged in the indictment.  United States v. Thirion, 813 F.2d 146, 151 (8th Cir. 1987).  "'The reason for this rule is that [the aiding and abetting statute, 18 U.S.C. § 2] does not create a separate offense, it simply makes those who aid and abet in a crime punishable as principals.'"  Id., quoting United States v. McKnight, 799 F.2d 443, 445 (8th Cir. 1986); see also United States v. Simpson, 979 F.2d 1282, 1285 (8th Cir. 1992), cert. denied, 507 U.S. 943 (1993) (noting that 18 U.S.C. § 2 "does not create a separate crime; instead, it makes the listed actions

a primary violation of another, specific crime"); <u>United States v. Gerhart</u>, 275 F.Supp. 443, 454-55 (S.D. W.Va. 1967).   Further, in <u>Nye & Nissen v. United States</u>, 336 U.S. 613, 620 (1949), the Supreme Court stated that "aiding and abetting . . . states a rule of criminal responsibility for acts which one assists another in performing."   Indeed, the section applies to the entire criminal code and need not be referred to in an indictment.

In this case, Section 3 of the Colombian Supreme Court of Justice's opinion, quoted above beginning at page four and titled "The Principle of Double Incrimination", refers to the drug trafficking and money laundering charges against Defendant but also mentions the continuing criminal enterprise charge contained in Count III and the predicate actions upon which the charge is based. The section concludes:

> It is worth to mention that the above mentioned association to commit crimes regarding commitment of punishable of narco-trafficking and assets laundering, in our legislations provides for a conviction privative of freedom which varies between six (6) and twelve (12) years in prison, which quantum will be increased in a half for those who organize, encourage, promote or lead, constitute of fund association to commit crimes, as in this case, *so complying with the principle of double incrimination regarding the same.*

(Def. Ex. E at 14) (emphasis added).

In summary, nothing in the doctrine of dual criminality prohibits prosecution of Defendant pursuant to 18 U.S.C. § 2, which is a theory of liability and not a separate crime.   This is

18

especially so in light of the lack of any indication from Columbia in the extradition documents precluding prosecution under this theory.

**D.    Prosecuting Defendant for pre-December 17, 1997 acts**

Defendant contends that application of the rule of specialty in this case also "compels the conclusion that references to any alleged acts in the indictment occurring before December 17, 1997 must be redacted." (Dkt. 67 at 16). Defendant submits that because the Colombian government conditioned Defendant's extradition on the United States government's agreement not to prosecute Defendant for any "actions" occurring before December 17, 1997, "the rule prohibits the United States from introducing evidence of acts occurring before that date for any purpose." (Id. at 16-17).

In its Amended Response, the Government represents that it will prosecute Defendant "only for his conduct occurring after December 17, 1997." (Dkt. 97 at 2). However, the Government contends that compliance with the doctrine of specialty does not require it to exclude evidence of Defendant's conduct prior to 1997 and does not require the court to redact the Indictment. The Government argues that pre-1997 evidence will help prove the scope of the conspiracy, Defendant's knowledge of and intent to join the conspiracy, and Defendant's relationships with other participants in the criminal association. (Id. at 2).

Instead, the Government proposes three measures to ensure that

19

Defendant's prosecution complies with the doctrine of specialty. First, the Government requests that the court charge the jury that it cannot find Defendant guilty of any of the offenses unless it finds that the Government has proven the charge beyond a reasonable doubt through evidence of Defendant's post-1997 conduct.  Second, the Government requests that the court use a special verdict form to ensure that any finding of guilt is consistent with this limiting instruction.   Third, in the event Defendant is convicted, the Government represents that it will request at the sentencing hearing that the court decide Defendant's sentence based solely on the post-1997 proof admitted at trial.  (<u>Id.</u> at 3).

Defendant responded at oral argument that the Government's proposal does not go far enough and points out that 26 of the 36 predicate acts supporting Count III pre-date December 17, 1997. Defendant contends that permitting predicate acts 1-26 and any other references to events that allegedly occurred prior to December 17, 1997, to remain in the Indictment, even in light of the prophylactic rules the Government suggests, is contrary to the conditions the Colombian government placed on Defendant's extradition and violates the rule of speciality.

It is well settled that "the doctrine of specialty limits only the charges on which an extradited defendant can be tried; it does not affect the scope of the proof admissible at trial for the charges for which extradition was granted and it does not alter the

20

forum country's evidentiary rules." <u>Bowe</u>, 221 F.3d at 1191
(internal citations omitted); <u>United States v. Garcia</u>, 208 F.3d
1258, 1261 (11th Cir. 2000), <u>cert. denied</u>, 534 U.S. 823 (2001)
(holding that the doctrine of specialty does not restrict the scope
of proof of other crimes that may be considered in the sentencing
process); <u>see also</u> <u>United States v. Flores</u>, 538 F.2d 939, 943-45
(2nd Cir. 1976)(finding that when a defendant is indicted and
charged for the precise offense contained in the extradition order,
the doctrine of specialty does not authorize the court to disregard
evidentiary rules by limiting "the evidence that might be introduced
to illuminate and establish the crimes charged").

In this case, the diplomatic notes the United States issued to
the Colombian government and Mr. Ruddy's affidavit both assure the
Colombian authorities that each one of the charges against Defendant
is supported by actions Defendant took after December 17, 1997.
In response, the Colombian Supreme Court of Justice was clear to
carve out a limitation in its extradition order: "Finally, taking
into account that in [Count III] on Joaquin Mario Valencia-Trujillo
there are 'predicate actions' committed prior and 'since or around
1997' it is indispensable that the National Government conditions
the extradition in that [Defendant] will not be judged for actions
committed prior to the effective date of the Legislative Act No. 1,
1997 . . . which authorized extradition of Colombians by birth."
(Def. Ex. E at 16). President Uribe's Resolution also includes

21

similar language.  (<u>See</u> Def. Ex. G at 11, 15).

Count III charges Defendant with engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848.  In the Eleventh Circuit, a defendant engages in a continuing criminal enterprise if he violates any provision of 21 U.S.C. §§ 801, et. seq., governing drug abuse prevention and control, "in the course of a continuing series of like violations undertaken in concert with five or more other persons 'with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management,' as a result of which that person obtains substantial income or resources." <u>United States v. Rosenthal</u>, 793 F.2d 1214, 1215-26 (11th Cir. 1986), <u>cert. denied</u>, 480 U.S. 919 (1987), <u>quoting</u> <u>United States v. Bascaro</u>, 742 F.2d 1335, 1357 (11th Cir. 1984).

Although the continuing criminal enterprise statute does not specify the number of criminal acts required for a conviction, case law binding on this court interprets a "continuing series of violations" as three or more substantive offenses.  <u>See, e.g.</u>, <u>Alvarez-Moreno</u>, 874 F.2d at 1408; <u>Rosenthal</u>, 793 F.2d at 1226; <u>United States v. Brantley</u>, 733 F.2d 1429, 1436 (11th Cir. 1984), <u>cert. denied</u>, 470 U.S. 1006 (1985).

The parties do not dispute that the Government must prove Defendant's commission of at least three predicate acts as an essential element of the continuing criminal enterprise charge.

22

Further, in addition to charging Defendant with aiding and abetting under 18 U.S.C. § 2, all 36 of the predicate acts listed in Count III of the Indictment charge Defendant with violating specific drug statutes under Title 21 of the United States Code.  None of the predicate acts alleges non-criminal conduct or background information.  (See Def. Ex. A at 9-27).

Due to the clear language in the Colombian extradition documents approving Defendant's extradition, permitting predicate acts 1-26 to remain in the Indictment violates the doctrine of specialty.  Therefore, predicate acts 1-26 of Count III should be redacted from the Indictment to eliminate any doubt that Defendant will not be prosecuted for those acts predating December 17, 1997. The Government must prove the essential elements of a continuing criminal enterprise based on predicate acts 27-36.

Although Count III is the only count that enumerates specific actions Defendant allegedly took prior to December 17, 1997, each count of the Indictment alleges that the crimes occurred beginning on "an unknown date which was no later than 1988, and continuing thereafter up to and including the date of this Indictment . . ." Contrary to Defendant's assertion, redaction of this language from the Indictment is unnecessary.

It is undisputed that the Government must prove the elements of each count through the use of post-December 17, 1997 evidence. The Government represented in Notes 073 and 449 and at oral argument

23

that each one of the charges against Defendant is supported independently by acts that occurred after December 17, 1997. (See Def. Ex. B at 2; Def. Ex. C at 4). Unlike the predicate acts in Count III, which are essential elements of the continuing criminal enterprise charge, the reference to pre-December 17, 1997 conduct merely relates to the general time frame of the drug conspiracies charged in Counts I and II and the money laundering conspiracy charged in Count IV. Unlike the predicate acts necessary to establish a continuing criminal enterprise, these allegations do not comprise an essential element of a charge.[9]

Additionally, this court endorses the Government's three proposals to ensure compliance with the doctrine of specialty and further recommends that the limiting instruction suggested by the Government be given to the jury not only at the beginning but also at the end of the trial. Defendant's trial is projected to be lengthy. Informing the jury of the limitations on the prosecution at the outset of the case will decrease the possibility of confusion.

However, Defendant's argument that the court should prohibit the Government from offering any evidence at trial that predates

---

[9] A defendant may be held liable for a conspiracy even if he joined it after its inception or played a minor role. See e.g. United States v. Knowles, 66 F.3d 1146, 1155 (11th Cir. 1995), cert. denied, 517 U.S. 1149 (1996); see also United States v. Barnes, 681 F.2d 717, 723 (11th Cir. 1982), cert. denied, 460 U.S. 1046 (1983).

December 17, 1997 is without merit.  At oral argument, Defendant conceded that some of that evidence may be "benign".  In any event, as discussed <u>supra</u>, nothing in the law governing extradition restricts the court from its consideration of evidentiary issues in a case where the defendant's presence has been obtained by extradition.  Nothing in this Report and Recommendation is intended to limit the court's consideration of evidence of Defendant's actions prior to December 17, 1997 if such evidence is relevant and otherwise admissible under the Federal Rules of Evidence. Therefore, the parties should raise evidentiary issues under Rule 404(b), Fed. R.  Evid., or any other evidentiary rule, at the appropriate time.

Accordingly and upon consideration, it is **RECOMMENDED** that:

(1)    **Defendant's Motion to Enforce Rule of Specialty** (Dkt. 67) be **GRANTED** to the extent that the court should order the Government to redact all references to Defendant's pre-December 17, 1997 actions listed as predicate acts in Count III of the Indictment, specifically predicate acts 1 through 26.  The Government must prove the essential elements of a continuing criminal enterprise based on predicate acts 27-36. It is further recommended that the court adopt the three proposals advanced by the Government and, in addition, provide the jury with the limiting instruction discussed herein at the beginning as well as at the conclusion of the trial;

25

(2)   **Defendant's Motion to Enforce Rule of Specialty** (Dkt. 67) be

otherwise **DENIED.**


**Dated:** June 23, 2005

ELIZABETH A JENKINS
United States Magistrate Judge


**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and
recommendations contained in this report within ten (10) days from
the date of this service shall bar an aggrieved party from attacking
the factual findings on appeal.  See 28 U.S.C. 636 (b)(1).