# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**UNITED STATES OF AMERICA,**

     Plaintiff,

vs.                                     **Case No.: 8:02-CR-329-17-EAJ**

**JOAQUIN MARIO VALENCIA-TRUJILLO,**

     Defendant.

_____/

## REPORT AND RECOMMENDATION

Before the court is **Defendant's Motion to Invalidate His Arrest and Involuntary Extradition, and Motion for <u>Franks</u> Hearing** (Dkt. 352) filed on March 6, 2006, the supporting Exhibits to Defendant's motion which the court has reviewed at length, and the **Government's Response to Defendant's Motion to Invalidate His Arrest and Involuntary Extradition, and Motion for <u>Franks</u> Hearing** (Dkt. 361), filed on March 20, 2006.[1]  Also before the court is **Defendant's Reply** to the Government's Response (Dkt. 368-2), filed on March 28, 2006.[2]  Oral

---

[1] This matter was referred to the undersigned by the district court pursuant to 28 U.S.C. § 636(c) and Local Rule 6.01(b) M.D. Fla. for proceedings, consideration, and a Report and Recommendation on Defendant's motion to invalidate his arrest and involuntary extradition, and motion for <u>Franks</u> hearing (Dkt. 355).

[2] On March 23, 2006, Defendant filed a motion for leave to file a reply to the Government's response, and on March 28, 2006, Defendant filed a subsequent motion for leave to file a reply and included his reply in the event that the court granted the motion. Although the court notes that Defendant has a practice of seeking leave to file replies (see e.g. Dkts. 107, 166, 202, 294, 365, and 368), which may be viewed as attempting to correct deficiencies in the initial motion after reviewing the Government's response, the court will allow the reply.  During oral argument the Government did not object to the court considering Defendant's reply. Therefore, the court will consider Defendant's reply and the motions for leave to file will be granted *nunc pro tunc* to April 5, 2006. Defendant should be aware, however, that in considering Defendant's reply, any matters not raised in the initial motion are not properly considered by the court in determining whether Defendant has met the burden of showing that a <u>Franks</u> hearing is appropriate. Specifically, allegations regarding

argument on the issue of whether a <u>Franks</u> hearing should be granted was held on April 5, 2006.  For the reasons stated herein, I recommend that the motion to invalidate Defendant's arrest and extradition and motion for <u>Franks</u> hearing be denied.

On March 22, 2002, a federal grand jury sitting in the Middle District of Florida returned an indictment against Defendant, charging him with four felony offenses.  The indictment asserts that Defendant is a member of the Cali Cartel, a Colombian drug trafficking organization.  All four counts allege that Defendant engaged in criminal conduct "[f]rom an unknown date which was no later than 1988, and continuing thereafter up to and including the date of this Indictment."  Count I alleges that Defendant conspired to import cocaine into the United States.  Count II alleges that Defendant conspired to possess cocaine with the intent to distribute it in the United States.  Count III alleges that Defendant conducted a continuing criminal enterprise and enumerates thirty-six predicate acts, each citing 18 U.S.C. § 2.  Predicate acts 1-26 predate December 17, 1997, and predicate acts 27-36 occurred after December 17, 1997.  Count IV alleges that Defendant conspired to commit money laundering offenses.

On March 31, 2003, the United States Embassy issued a Diplomatic Note requesting that the Colombian government extradite Defendant to stand trial on the charges in the indictment.  The documents supporting the request for extradition included the affidavit of Agent Rodrick Huff ("Huff") of the Federal Bureau of Investigation, which was sworn and subscribed to on November 22, 2002.  Huff's 139-page affidavit details his investigation into Defendant's alleged illegal acts, including facts obtained through ten cooperating witnesses.  His affidavit cites evidence dating back

---

the January 17, 2002 affidavit of Ruben Dario Cuevas Sanclemente and other new matters that are raised for the first time in the reply will not be considered by the court in its discussion on the merits.

to 1988 in support of all four counts of the indictment.[3]  The Colombian Supreme Court approved Defendant's extradition on February 11, 2004 (Dkt. 126 at 4), and Defendant was subsequently extradited to the United States on March 18, 2004.

## I. The Parties' Arguments

Defendant argues that he is entitled to a hearing pursuant to <u>Franks v. Delaware</u>, 438 U.S. 154 (1978), because Huff's affidavit supporting the extradition request contained misrepresentations or omissions that were (1) knowingly or recklessly made by Huff; and that (2) the result of excluding the alleged misrepresentations and omissions would have been a lack of probable cause for issuance of the warrant.  As a remedy for the alleged Fourth Amendment violation, Defendant argues that the court should void his arrest and extradition and compel the United States to repatriate him to Colombia.[4]

Specifically, Defendant alleges that the Colombian government agreed to extradite him based on the assurance that he was involved in five instances of criminal conduct occurring after December 17, 1997.[5]  The United States provided the Colombian government with Huff's affidavit in support of extradition.  Defendant alleges that each of these five instances of criminal conduct outlined in Huff's affidavit contain material misrepresentations or omissions that were intentionally and recklessly made by Huff.

---

[3] Huff's discussion of Defendant's post-December 17, 1997 actions begins on page 103 of his affidavit.

[4] Although Defendant requests an order invalidating his arrest and extradition and subsequently repatriating him to Colombia, Defendant provides no authority that <u>Franks</u> is applicable to an extradition proceeding or that repatriation would be the appropriate remedy if the court did find a <u>Franks</u> violation.  The court addresses this issue more thoroughly, <u>infra</u>.

[5] December 17, 1997, is the date after which extradition of Colombian citizens is allowed under Article 35 of the Colombian Constitution (modified by Legislative Act No. 01 of 1997).

In its response, the Government argues that Defendant has failed to make a substantial preliminary showing sufficient to warrant an evidentiary hearing.  Specifically, the Government argues that Defendant disputes the accuracy of the information itself instead of challenging the credibility of the affiant.  Rather, the Government argues, the veracity of the underlying witnesses or evidence should be challenged at trial.  Finally, the Government's position is that any of the five instances of criminal conduct alone would be sufficient to satisfy the probable cause standard to warrant Defendant's arrest and extradition.

## II. Standard for *Franks* Hearing

Franks set forth the standards for considering an attack on the veracity of an affidavit filed in support of a search warrant.  Under Franks, a defendant may be entitled to an evidentiary hearing on whether the content of a search warrant affidavit was insufficient to establish probable cause if he can first make a substantial preliminary showing that the affiant's statements were deliberately false or demonstrated reckless disregard for the truth.  Franks, 438 U.S. at 155–56, 171.  Once the defendant has shown the affiant's deliberate or reckless disregard for the truth, the defendant must then make a substantial preliminary showing that absent the alleged misrepresentations or omissions, the remaining allegations in the affidavit do not support probable cause.  Id. at 155–56, 171–72.  If, absent the alleged misrepresentations or omissions, the affidavit still supports probable cause, a Franks hearing is not necessary.  See United States v. Novaton, 271 F.3d 968, 987 (11th Cir. 2001), cert. denied, 535 U.S. 1120 (2002).

To establish entitlement to a Franks hearing, the defendant carries the burden of proving each of the two prongs, and this is a high burden to meet.  United States v. Martin, 615 F.2d 318, 329 (5th Cir. 1980).  The court must find that any misrepresentations were intentional or reckless; negligence

or mistake will not suffice.  Id.; O'Ferrell v. United States, 253 F.3d 1257, 1270–71 (11th Cir. 2001).

While it is possible for recklessness to be inferred from proof of the omission itself where the facts

omitted are clearly critical to a finding of probable cause, Martin, 615 F.2d at 329, it will be difficult

for an accused to prove that an omission was made recklessly or intentionally, instead of negligently,

"unless he has somehow gained independent evidence that the affiant had acted from bad motive or

recklessly in conducting his investigation and making the affidavit."  Id.

Furthermore, the allegations must be accompanied by an offer of proof, should specifically

point out the portion of the affidavit claimed to be false, and should be supplemented by a statement

of supporting reasons.  Novaton, 271 F.3d at 986.  Only the affiant's credibility—his intentional or

reckless disregard for the truth—may be challenged; not the veracity of the governmental informant

or the evidence.[6]  Id.  Moreover, a challenge under Franks must be more than conclusory.  Franks,

438 U.S. at 171.

If the court decides that a Franks hearing is appropriate, Defendant must prove the

allegations by a preponderance of the evidence during the hearing to be entitled to relief.  The

remedy for a Franks violation is for the court to declare the search warrant invalid and suppress the

evidence seized pursuant to the warrant. Id. at 156.

---

[6] In Novaton, the Eleventh Circuit noted that "the mere fact that an informant's trial
testimony contradicts information attributed to that informant in an affidavit supporting a warrant
does not entitle a defendant to suppression. Instead, the defendant must show that it is the agent, and
not the informant, who has made misrepresentations." Id. at 987–88. This is important in the instant
case because Defendant relies on arguments that several of Huff's informants, such as Avenia-Soto
and Martinez, testified or signed sworn statements contradicting information in Huff's affidavit after
the affidavit was drafted.  However, Novaton clarifies that a witness' contradictory testimony does
not mean that the agent deliberately or recklessly misrepresented the information available to him
at the time the affidavit was drafted.

### III. Whether *Franks* **Applies in the Context of Extradition Proceedings**

Although the Supreme Court decided Franks in the context of a search warrant, some circuits, including this one, have assumed that Franks applies in sub-facial challenges to arrest warrants.  See Martin, 615 F.2d at 327–29; Olson v. Tyler, 771 F.2d 277, 281 n. 6 (7th Cir. 1985). However, the Second Circuit has noted that neither the Supreme Court nor the Second Circuit has extended Franks to arrest warrants.  See United States v. Awadallah, 349 F.3d 42, 65 n. 17 (2d Cir. 2003) (noting that the Fourth and Fifth Circuits have ruled otherwise), cert. denied, 543 U.S. 1056 (2005).[7]   None of these cases, however, involved extradition warrants.

Defendant is asking this court to declare his arrest and extradition invalid as an unreasonable seizure of his person;[8] however, he concedes that applying Franks to invalidate an extradition request would be a case of first impression and he provides no authority that repatriation would be the appropriate remedy were the court to find a Franks violation.

Defendant also admitted at oral argument that had he been arrested in the United States pursuant to the indictment, he would not be entitled to a Franks hearing.  Although Defendant submits that this court should place itself in the position of the Colombian Supreme Court in determining whether it would have granted the extradition request in light of the alleged misrepresentations and omissions, this court is not persuaded that it can make a Fourth Amendment analysis for the Colombian Supreme Court.

Therefore, this court finds no basis in law that Defendant is entitled to a Franks hearing under

---

[7] However, Martin applied Franks to an arrest warrant situation where the defendant challenged the evidence seized as a result of the arrest warrant.  Martin, 615 F.2d at 320, 328–29. That is not the situation here, where Defendant disputes only the act of extradition.

[8] Defendant does not contend that there was any evidence seized incident to the extradition.

these circumstances and recommends that the motion be denied on this ground.  However, it is noted that the Government has not challenged Defendant's ability to raise a <u>Franks</u> challenge to the extradition request.  Assuming that a <u>Franks</u> inquiry is applicable in this context and for the reasons discussed subsequently, Defendant has not met his burden of establishing his right to a <u>Franks</u> hearing.

**IV. Discussion on the Merits**

Defendant argues that there are five post-1997 criminal episodes outlined in Huff's affidavit where Huff has misrepresented or omitted information that would be critical to a determination of probable cause: the September 20, 1998 smuggling venture; the February 15, 1999 smuggling venture; the February 16, 2000 smuggling venture; the April 5, 2000 smuggling venture; and the May 1, 2000 smuggling venture.  Because of the factual detail presented in Huff's affidavit, the court will not recount the facts of each criminal episode separately.  In examining the totality of the affidavit, the court finds that Defendant has not presented sufficient evidence as a threshold matter to establish that Huff intentionally or recklessly misrepresented or omitted facts and that absent these alleged misrepresentations, probable cause would not exist.

First, Defendant's proffer fails to prove Huff's intent or reckless disregard to misrepresent facts as it relies, to some extent, on the credibility of witnesses and evidence, as opposed to challenging Huff's credibility. Defendant challenges that paragraph 377 of Huff's affidavit—which alleges that Pedro Navarette's organization smuggled approximately 3,600 kilograms of cocaine into Mexico on behalf of Defendant's organization around September 20, 1998—is false.  Huff based these allegations largely in part on information he received from a confidential informant, later identified as Reynaldo Avenia-Soto ("Avenia").  In January 2001, Avenia testified in another trial

in the Middle District of Florida, and when questioned about the owner of the drugs for whom Navarette transported the 1998 shipment, Avenia responded that he did not know.   In addition, Avenia testified in 2001 that he believed there was some type of disagreement between the Cali Cartel representative and Navarette because the organization did not appear to work for the Cali Cartel in 1997 or 1998, which would appear contrary to Huff's assertion that Navarette undertook the 1998 smuggling venture on behalf of Defendant.   Defendant alleges that because Huff knew of Avenia's 2001 testimony,[9]   Huff materially misrepresented the credibility of the information provided by Avenia when he executed the affidavit on November 22, 2002.

Although this may be Defendant's strongest argument in support of a Franks hearing, this evidence fundamentally attacks Avenia's credibility as a witness and informant, not Huff's credibility, and is therefore insufficient.   See Novaton, 271 F.3d at 987–88 (the mere fact that an informant's trial testimony contradicts information attributed to that informant in an affidavit supporting a warrant does not entitle a defendant to suppression . . . the defendant must show that it is the agent, and not the informant, who has made misrepresentations).   Moreover, Defendant infers that Avenia's 2001 testimony was more credible than the information Huff knew at the time he executed the affidavit.   Defendant does not make a sufficient threshold showing that at the time of the affidavit's execution, Huff intentionally or recklessly misstated information known to him.[10]

---

[9] This assumption is predicated on Defendant's assertion that Huff was the case agent at Avenia's trial.

[10] Defendant also challenges the credibility of the evidence, rather than Huff's alleged intentional misrepresentations, in regard to a cocaine seizure that occurred around February 15, 1999.   Defendant specifically challenges paragraph 382 of the affidavit, which outlines that the Customs Service confirmed that a freight container from which 300 kilograms of cocaine were seized was sent by Unipapel, S.A. to Sak-n-Pak in New Orleans.   Huff further outlined that he reviewed the Reports of Investigation from the case file regarding this seizure and Customs Service

Next, Defendant challenges information in the affidavit with evidence of incidents that clearly occurred after the Huff affidavit was executed on November 22, 2002.  In regard to the February and April 2000 seizures, Defendant specifically challenges paragraphs 399–417 and 424–443, respectively, of the affidavit as false.  These paragraphs outline the dealings and operations of several confidential informants and the intelligence that Huff received from them regarding these two shipments.  As evidence of the falsity of this information, Defendant submits a September 18, 2003, sworn statement by Pedro Navarette who allegedly conducted several smuggling ventures on behalf of Defendant.  Defendant argues that in his statement, Navarette did not specifically identify Defendant as one of the owners of these shipments,[11] and that Huff therefore misrepresented that these smuggling operations were on Defendant's behalf.

---

records documenting a long-term business relationship between Unipapel and Sak-n-Pak, and the evidence established that Defendant was the owner of the container and intended to ship cocaine to the United States (Dkt. 352, Ex. 1, Huff Aff. at ¶¶ 380–383).  Defendant argues that an administrative message produced by the Government in response to Defendant's motion does not constitute a "report" as outlined in Huff's affidavit, and that documents and exhibits from the Colombian government, dated 1999, prove that Colombian National Police searched these containers and found no narcotics or contraband.  Defendant further argues that Huff tried to bolster the February 15, 1999 seizure with reference to a 1993 Miami seizure in which cocaine was found in a Unipapel, S.A.-owned shipping container, but that Huff materially omitted the fact that cocaine was also found in a container owned by the Chiquita Banana Company during that 1993 seizure. (Dkt. 352, Ex. 1, Huff Aff. at ¶ 385).

However, Defendant's arguments do not prove that Huff intentionally or recklessly misrepresented or omitted information known to him at the time he executed the affidavit.  Huff attested that in establishing the connection between Defendant and the February 15, 1999 seizure he reviewed reports and records (Dkt. 352, Ex. 1, Huff Aff. at ¶¶ 380, 383), which indicates that this administrative message was not the only piece of documentation on which Huff relied.

[11] Although Navarette's statement may not clearly identify Defendant as the owner of the February 2000 M/V Rebelde cocaine shipment, the statement clearly identifies a "Mario Valencia" as someone with whom Navarette had worked to smuggle cocaine via maritime smuggling operations.  (Dkt. 352, Ex. 51 at 6–7, 10).

It is obvious that a defendant cannot rely on evidence or testimony that surfaced after the affidavit was executed to allege that the affiant intentionally or recklessly misrepresented what was known to him at the time of the affidavit's drafting.  See United States v. Burston, 159 F.3d 1328, 1333–34 (11th Cir. 1998) (a witnesses' multiple felony convictions not mentioned in an affidavit called into question the credibility of the witness but not the affiant).  In conducting a Franks inquiry,  the court must look at a snapshot in time—what the affiant knew at the time he executed the affidavit in determining whether the affiant intentionally or recklessly misrepresented or omitted what the affiant knew.  Navarette's statement of September 2003 has no bearing on what Huff knew at the time he executed  the affidavit.[12]

Third, many of the arguments that Defendant makes based on his proffered evidence are simply inferences that are in large part speculative.  For every inference that Defendant draws in favor of a misrepresentation or omission, a contradictory inference could be drawn.[13]  Defendant's

---

[12] It should be noted, however, that Defendant does not challenge paragraphs 529–536 of Huff's affidavit which state that Navarette admitted after his arrest that he last worked for Defendant smuggling drugs in 2000.

[13] For example, Defendant propounds "the other Valencias" theory to challenge Huff's assertion that Defendant was involved in a criminal episode.  Defendant was implicated in a New York smuggling operation referred to as the Orozco-Dorado distribution ring, in which approximately fifteen people were indicted in the Eastern District of New York.  According to the Government's confidential informant, Dorado "bragged openly" that their cocaine supplier was "El Abogado" and "one of the Valencias."  (Dkt. 352, Ex. 1, Huff Aff. at ¶ 461).  In addition, the confidential informant advised Huff that after telling Dorado that he/she was a personal acquaintance of Mario Valencia from Cali, Dorado confirmed that Valencia was the organization's new source of cocaine supply.  (Dkt. 352, Ex. 1, Huff Aff. at ¶ 462).  Defendant argues that it is clear that "one of the Valencias" to whom Dorado refers are "the other Valencias" who are specifically identified in the Government's extradition request in the Orozco case.  In addition, Defendant argues that because Defendant has not been charged in New York, it is clear that he is not "one of the Valencias" to whom Dorado referred and that the defendants charged in that case have not implicated Defendant.  Defendant offers no evidence for this theory other than his own inferences and assumptions, and the court finds this argument unpersuasive.

inferences are not supported by an offer of proof for purposes of entitlement to a <u>Franks</u> hearing. <u>See</u> <u>Novaton</u>, 271 F.3d at 986 (allegations of deliberate falsehood or reckless disregard for the truth must be accompanied by an offer of proof). Moreover, many of the other alleged misrepresentations or omissions that Defendant offers are simply not material to a finding of probable cause,[14] and materiality is essential no matter how deliberate or reckless the alleged misrepresentations were. <u>Id.</u> at 987.

In the affidavit, Huff sets forth a history of Defendant's criminal activity dating back to 1988 and outlines numerous cooperating witnesses, investments, financial records, and business ventures establishing Defendant's involvement in the charged drug smuggling activities. The Huff affidavit recounts the thirty-six acts outlined in Count III of the indictment with details of smuggling or money laundering schemes. Defendant identifies only five of the episodes of criminal conduct as containing alleged material misrepresentations or omissions.

In summary, Defendant has not offered a sufficient proffer of evidence that establishes the falsity or materiality of the challenged statements, that the affiant was intentional or reckless in making these statements at the time the affidavit was drafted, or that without the challenged statements probable cause would not have existed. Hence, no evidentiary hearing is warranted on the motion.

---

[14] Some examples cited in Defendant's offer of proof for a <u>Franks</u> hearing are whether a government informant received a short sentence in exchange for his cooperation; whether Navarette's organization conducted ten, eleven, or twelve smuggling operations during 1998; or whether Huff personally interviewed DEA informants instead of relying on debriefing reports written by other DEA agents. Defendant acknowledged during oral argument that whether Huff personally interviewed DEA informants was neither material nor reckless for the purposes of <u>Franks</u>. However, Defendant asserted that these facts, together with evidence that arose after the Huff affidavit was executed, justify a <u>Franks</u> hearing. This court disagrees.

Case 8:02-cr-00329-EAK-AAS   Document 386   Filed 04/17/06   Page 12 of 12 PageID 1617

## Conclusion

Defendant has not established that a <u>Franks</u> violation can invalidate an order of extradition by a foreign court surrendering a Defendant to face charges in the U.S. Notwithstanding this threshold issue, Defendant has also not made a substantial preliminary showing that Huff deliberately or recklessly made material misrepresentations or omissions in his affidavit or that the challenged statements or omissions were essential to finding probable cause. Having conducted oral argument on Defendant's motion for <u>Franks</u> hearing and having considered the legal arguments of the parties, it is therefore **RECOMMENDED** that **Defendant's Motion to Invalidate His Arrest and Involuntary Extradition, and Motion for <u>Franks</u> Hearing** (Dkt. 352) be **DENIED**.

Date: April 17, 2006

ELIZABETH A JENKINS
United States Magistrate Judge

Case Number: **Case No.: 8:02-CR-329-EAK-EAJ**

### Notice to Parties

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal. See 28 U.S.C. § 636(b)(1).

Copies to:
Counsel of Record
District Court Judge